UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JILL RENEE RAMSDELL-LONGNECKER,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>    Defendant. | CASE NO. 3:10-CV-05750-RBL-JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>NOTING DATE: September 2, 2011 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (<u>see</u> ECF Nos. 13, 14, 15).

After reviewing the relevant record, the Court concludes that the ALJ failed to evaluate properly plaintiff's testimony and credibility. The ALJ also discredited the medical opinion of a treating physician in favor of an opinion by a non-examining, non-physician, disability evaluator with no apparent medical background while erroneously referring to it as an opinion by a "State Agency reviewing physician." Therefore, this matter should be reversed and remanded to the administration for further consideration.

## BACKGROUND

Plaintiff, JILL RENEE RAMSDELL-LONGNECKER, was forty-two years old on her alleged disability onset date of December 27, 2005 (Tr. 183). It is undisputed that she suffered from the severe impairments of disorders of the back (discogenic and degenerative), migraines and depression (Tr. 20). Plaintiff worked in the health care industry from 1995 until 2005 (Tr. 189, 244). Her duties included checking patients into the medical center, checking blood pressures and temperatures, as well as administering injections and suturing (Tr. 244). Plaintiff was approximately 5'3" and weighed about 128 pounds (Tr. 531).

In October, 2005, plaintiff reportedly felt a "pop" in her lower back at work, followed by burning discomfort and pain in her left thigh down to the leg (Tr. 551). She rated her pain as ranging from 3 to 8 out of 10 (id.). After many visits to the doctor because of pain (see, e.g., Tr. 433, 542, 547), on February 15, 2007, plaintiff had fusion surgery of the spine, at C5 through C7 (Tr. 293-95, 518). The neurosurgeon diagnosed plaintiff with "C5-6 and C6-7 disk herniations, with corresponding radiculopathies" (Tr. 293).

Because plaintiff was suffering continued pain after this surgery, plaintiff underwent a posterior spinal fusion at T9 to T10 on March 6, 2008 (Tr. 821-23). As indicated by Dr. Jos Cove, M.D., ("Dr. Cove"), prior to this subsequent surgery, plaintiff "had extensive nonoperative treatment with failure to improve and also had quite extensive interventions" (Tr. 821). Dr. Cove indicated that plaintiff also "had a relatively convincing discography study with a normal pain-free disk above and below the T9-10 level and 10 out of 10 pain at the T9-10 disk" (id.).

## PROCEDURAL HISTORY

Plaintiff applied for Social Security Disability benefits alleging disability due to inability to bend, lift, sit, stand or walk for extended periods of time (Tr. 183-85, 194). She indicated that

she could not mop or vacuum due to pain (Tr. 194). She also indicated that going "up and down stairs or even walking" caused her pain and that her pain made her tired and sad and that it required effort to get out of bed (id.). Finally, she indicated that she stopped working because the pain was so severe (id.).

In her 2007 application for disability benefits, plaintiff indicated that her primary treating physician for the recent ten years was Dr. Raymond Andreassen, D.O., ("Dr. Andreassen") (Tr. 197). He adjusted plaintiff's back, prescribed medications and ordered tests such as MRI and CT scans (id.). She indicated that she had been seeing a neurosurgeon, Dr. Timothy Cohen, M.D., regarding her herniated discs and Dr. Marc Slonimski, M.D., for chronic back pain (Tr. 197-98). She remarked in her application that she wanted to be able to work, but when she sat down, her legs and feet went numb (Tr. 213). She indicated that when she drove to the medical center, she had to stop every 30 minutes to an hour in an attempt to alleviate the pain (Tr. 213). Plaintiff's medications included, among other things, cymbalta, diazepam, fentanyl, lunesta, oxycodone, rozerem, and sonata (Tr. 236-39). Many of these medications are for pain or for sleep assistance and many of them allegedly cause detrimental side effects, such as sleepiness and loss of concentration (id.).

Her application for disability benefits was denied (Tr. 114-19). Her requested hearing (Tr. 120-23) was held before Administrative Law Judge Gary J. Suttles ("the ALJ") on March 15, 2010 (Tr. 45-113). On April 27, 2010, the ALJ issued a written decision finding that plaintiff was not under a disability as defined in the Social Security Act from December 27, 2005 through the date of the decision (Tr. 18-29). On August 18, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981.

Plaintiff filed a complaint seeking review of the ALJ's written decision in this Court (ECF No. 2). In her Opening Brief, plaintiff contends that the ALJ (1) erred in failing to follow the treating physician rule; (2) failed to evaluate properly plaintiff's testimony; and (3) erroneously relied on flawed vocational expert testimony (ECF No.13, pp. 18-25).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also

Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9 (W.D. Wash. 2009). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout v. Comm. Soc. Sec., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (reviewing legal errors found to be harmless).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly plaintiff's credibility</u>.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair,

885 F.2d at 603. Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).

In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); see also Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

1    Here, the ALJ found that "claimant's medically determinable impairments could

2    reasonably be expected to cause the alleged symptoms" (Tr. 25). Therefore, plaintiff's testimony

3    could not be discredited properly as to the severity of symptoms "based solely on a lack of

4    objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell</u>, 947 F.2d

5    at 343, 346-47. Nevertheless, the ALJ supported his decision not to credit fully plaintiff's

6    testimony mainly because "the objective medical evidence of record" failed to support her

7    allegations (Tr. 25; <u>see also</u>, <u>generally</u>, Tr. 25-27).

8    Because the ALJ did not cite any evidence of malingering, he was required to provide

9    specific "clear and convincing" reasons for rejecting the claimant's testimony (Tr. 25; <u>see also,

10   e.g.,</u> Tr. 518 (medical notes indicated that plaintiff's blood pressure, which usually ran in the 90s

11   or low 100s was 141/79, which was interpreted as "good indicator that she [wa]s in quite a bit of

12   pain"); Tr. 664 ("The patient is not a malingerer")). See <u>Smolen</u>, 80 F.3d at 1283-84; <u>Reddick</u>,

13   157 F.3d at 722. In addition to the objective medical evidence, the ALJ cited the fact that

14   plaintiff indicated that her pain level on average was a 5 out of 10, but also acknowledged that

15   plaintiff indicated that her pain level varied and that on bad days was 8-9 out of 10 (Tr. 25, 26).

16   The only other explicit support given by the ALJ for the adverse credibility determination

17   was plaintiff's activities of daily living, including "living independently, driving an automobile,

18   taking care of her grandchild, [doing] grocery shopping and going on and having plans to go on

19   trips out of the country" (Tr. 26).

20   Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the

21   mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way

22   detract from her credibility as to her overall disability." <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th

23   Cir. 2007 (*quoting* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit

24

specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, 495 F.3d at 639 (*citing* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

      The ALJ here did not indicate that he found that plaintiff's daily activities were transferable to a work setting. Indeed, plaintiff's activities of daily living do not appear to be the type of activities that would be transferable to a work setting. Therefore, the ALJ was required to indicate specifically which testimony by plaintiff was contradicted by plaintiff's activities of daily living in order to utilize plaintiff's activities of daily living as a basis for an adverse credibility finding. See Orn, 495 F.3d at 639. The ALJ instead found without specific explanation that plaintiff's "numerous activities of daily living are totally inconsistent with that of a truly disabled individual" (Tr. 26). This was legal error. See Orn, 495 F.3d at 639.

      In addition, the Court notes that regarding the ALJ's assertion that plaintiff was "taking care of her grandchild," plaintiff testified that her grandchild "helped take care of me" (Tr. 72). Therefore, plaintiff's activities related to her grandchild do not appear to contradict any testimony by plaintiff. The Court also notes that plaintiff testified that when she went on her cruise to Italy, she typically spent her day "sitting in a lounge chair, playing cards" (Tr. 97). Plaintiff testified that she spent less than a quarter of her day on her feet (id.). Therefore, contrary to the ALJ's implication, the fact that plaintiff went on a cruise to Italy does not appear to

contradict any of plaintiff's testimony regarding her abilities or limitations. The ALJ appears to imply that disabled people in general are not capable of international travel. The Court also notes that plaintiff further testified that she would take her trip to Japan for her son's wedding even if she had to do so in a wheelchair (Tr. 97). The ALJ failed to identify any specific testimony of plaintiff that was contradicted by her activities of daily living. As the ALJ also failed to find that plaintiff's activities of daily living were transferable to a work setting, her daily activities could not form a proper basis for an adverse credibility finding. See Orn, 495 F.3d at 639.

The Court also notes that the ALJ relied on November 11, 2009 treatment notes to find a lack of "objective signs or physical findings that would preclude her from engaging in light/sedentary work" (Tr. 25). However, the ALJ failed to mention that plaintiff reported at that time that the severity of her pain was "much more severe" than it had been, and failed to mention that the examination of the lumbar spine resulted in tenderness and that the straight leg raises on the right and left both were positive for pain (Tr. 847-850). The ALJ found plaintiff's pain to be "mild to moderate at most," even though plaintiff was going to the doctor's office reporting severe pain (Tr. 26, 847-50). Again, once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell, 947 F.2d at 343, 346-47.

Based on a review of the relevant record and for the reasons discussed, the Court finds that the ALJ here failed to provide specific "clear and convincing" reasons to discount plaintiff's credibility and testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

1    2. <u>The ALJ failed to evaluate properly the opinion by treating physician, Dr. Andreassen</u>.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." <u>Edlund v. Massanari</u>, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. <u>Lester</u>, <u>supra</u>, 81 F.3d at 831 (citations omitted). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." <u>Van Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831).

The ALJ here discredited the medical opinion of a treating physician in favor of an opinion by a non-examining, non-physician, disability evaluator with no apparent medical

REPORT AND RECOMMENDATION- 10

background while erroneously referring to it as an opinion by a "State Agency medical consultant" and "State Agency reviewing physician" (Tr. 23, 27). Although the ALJ discussed various notes from plaintiff's extensive medical history, this opinion by the state agency disability evaluator appears to be the only opinion explicitly considered by the ALJ other than the medical opinion by treating physician Dr. Andreassen. When reviewing this opinion by Ms. Shelly Alonso (see Tr. 656-660), the ALJ referred to Ms. Shelly Alonso as a "State agency medical consultant" (Tr. 23), however defendant "concedes that the ALJ erred in incorrectly giving significant weight to disability examiner Alonso's opinion as being the opinion of a State agency medical consultant in determining plaintiff's residual functional capacity" (Defendant's Brief, ECF No. 14, pp. 4-5). Defendant contends that the error was harmless. The Court does not agree, as this opinion largely provided the basis for the ALJ's determination of claimant's residual functional capacity (Tr. 23).

The ALJ noted that Dr. Andreassen indicated in February, 2010 that he had not examined plaintiff since August, 2009 (Tr. 27). The ALJ gave "little weight" to Dr. Andreassen's medical opinions for this reason and for two other reasons. First, the ALJ found that Dr. Andreassen did not provide any objective evidence to support his opinions (Tr. 27). The Court observes that Dr. Andreassen testified that he had looked over plaintiff's records as well as the objective diagnostic results (Tr. 91-92). The Court also observes that when submitting a written impairment questionnaire regarding plaintiff's limitations, Dr. Andreassen specifically indicated that his diagnoses were supported by MRIs, X-rays and specialists' reports (Tr. 724). In this questionnaire, Dr. Andreassen indicated many specific functional limitations on plaintiff's ability to work (Tr. 726-30).

Dr. Andreassen examined plaintiff many times over the course of over a decade. The Court notes specifically some of the objective evidence obtained directly or evaluated by Dr. Andreassen, as follows. On October 19, 2005, Dr. Andreassen examined plaintiff and noted the presence of "some catch in the left hip with rotation and frog leg positioning" (Tr. 547). He also observed "some muscle spasms still in the lumbar area" (id.). On January 20, 2006, Dr. Andreassen examined plaintiff and observed "decreased rotation to the mid portion of the C spine" (Tr. 542). He also observed again muscle spasms in the lumbosacral area bilaterally (id.). On August 7, 2006, Dr. Andreassen reviewed the X-ray results of plaintiff and observed that "the disc space of 9 and 10 is diminished with some increased osteoarthritic changes" (Tr. 432). He also conducted a physical examination of plaintiff on this date and observed that "sensory is a little accentuated to the hyper side in the left lower extremity and normal in the right" (Tr. 433). On August 19, 2007, Dr. Andreassen noted that plaintiff was moving "slowly and deliberately as if she was in pain" (Tr. 513). He observed muscle spasms in multiple areas of plaintiff's back (id.).

The ALJ also gave the medical opinion of Dr. Andreassen "little weight" in part because he found that the limitations placed on plaintiff by Dr. Andreassen were not consistent with plaintiff's "rather extensive activities of daily living" (Tr. 27). The Court notes that plaintiff's activities of daily living do not appear to be very extensive, and more importantly, the ALJ fails to specify which limitation placed on plaintiff by Dr. Andreassen was not consistent with which activity of daily living engaged in by plaintiff. It is unclear how driving, grocery shopping, performing some household chores, going to the movies or traveling internationally necessarily were inconsistent with Dr. Andreassen's opinion that plaintiff was precluded from all work. This

is especially the case as the ALJ failed to find that such activities of plaintiff were transferable to a work setting.

Based on a review of the relevant record and for the reasons indicated above, the Court concludes that the ALJ did not evaluate properly the medical opinions of Dr. Andreassen. The Court concludes that the ALJ "failed to provide specific, *legitimate* reasons that are supported by substantial evidence in the record," for his assignment of "little weight" to the medical opinions of Dr. Andreassen. See Van Nguyen, 100 F.3d at 1466.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. It is not clear from the record that a finding that plaintiff was disabled is required. Although the ALJ here inappropriately discounted the opinion of a treating physician in favor of an opinion by one whom the ALJ erroneously thought was a medical consultant, the medical record in this case is extensive and includes evidence of at least temporary improvement in plaintiff's condition (see Tr. 353; but see Tr. 349, 821-22). There also exist many medical opinions that do not appear to have been considered explicitly by the ALJ, such as those by Dr. Marc Slonimski, M.D., treating pain management specialist; Dr. Timothy Cohen, M.D., treating neurosurgeon; Dr. Jos Cove,

M.D., treating orthopedic surgeon; and, Dr. Vladimir Fiks, M.D., treating pain management specialist.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick, 157 F.3d at 722; Andrews, 53 F.3d at 1043. If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the administration to consider properly the medical opinions of Dr. Andreassen, as well the other medical opinions in plaintiff's record.

CONCLUSION

The ALJ failed to evaluate properly plaintiff's testimony and credibility. The ALJ also discredited the medical opinion of a treating physician in favor of an opinion by a non-examining, non-physician, disability evaluator with no apparent medical background while erroneously referring to it as an opinion by a "State Agency reviewing physician." These errors were not harmless.

Because of the specific errors by the ALJ, the ALJ assigned to this matter following remand must hold a new hearing and allow plaintiff to testify and present new evidence and arguments. The ALJ assigned to this matter following remand also must evaluate the record anew and issue a new decision.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration

| 1 | pursuant to sentence four of 42 U.S.C. § 405(g).  **JUDGMENT** should be for plaintiff and the |
| 2 | case should be closed. |

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 2**,** 2011, as noted in the caption.

Dated this 5th day of August, 2011.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge